## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Linens Holding Co., *et al.*,[1] | : | Case No. 08-10832 (CSS) |
| | : | |
| Debtors. | : | Substantively Consolidated |
| | : | |
| Charles M. Forman, Chapter 7 Trustee for the estate of Linens Holding Co., *et al.*, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 11-_____ |
| | : | |
| v. | : | |
| | : | |
| HOMEWELL CORPORATION LTD., | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT TO AVOID AND RECOVER
## PREFERENTIAL TRANSFERS AND FOR OTHER RELIEF

Charles M. Forman, the chapter 7 trustee (the "Plaintiff") of the substantively-consolidated estate of the above-captioned debtors (the "Debtors"), by and through his undersigned counsel, alleges for his complaint against defendant herein as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, among other things, to avoid and recover certain preferential transfers made by one or more of the Debtors to HOMEWELL CORPORATION LTD. (the "Defendant").

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Linens Holding Co. (2917), Linens 'n Things, Inc. (3939), Linens 'n Things Center, Inc. (0138), Bloomington, MN., L.T., Inc. (8498), Vendor Finance, LLC (5543), LNT, Inc. (4668), LNT Services, Inc. (2093), LNT Leasing II, LLC (4182), LNT West, Inc. (1975), LNT Virginia LLC (9453), LNT Merchandising Company LLC (2616), LNT Leasing III, LLC (3599) and Citadel LNT, LLC (2479). The Debtors' respective estates have been substantively consolidated, and are collectively referred to herein as the "Debtors."

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

5.      On May 2, 2008 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6.      As of February 26, 2010, this Court converted the Debtors' chapter 11 cases to cases administered under chapter 7 of the Bankruptcy Code (the "Conversion"), and the Office of United States Trustee appointed the Plaintiff to serve as the interim trustee of the estate of the substantively consolidated Debtors.

7.      On April 21, 2010, the Chapter 7 Trustee conducted a meeting (the "341 Meeting") of creditors pursuant to section 341 of the Bankruptcy Code.

8.      As indicated on the docket of case number 08-10832 (CSS)—at docket number 6066—the 341 Meeting was conducted and concluded on or before April 23, 2010.

9.      Pursuant to section 702(d) of the Bankruptcy Code, the Chapter 7 Trustee's appointment in these cases was finalized with the conclusion of the 341 Meeting without the election of another trustee.

10.     Upon information and belief, Defendant is a corporation or other legal entity, whose state of incorporation or formation presently is unknown to Plaintiff.  As further alleged herein, Defendant transacted business with one or more of the Debtors prior to the Petition Date.

## THE DEBTORS' THIRD AMENDED PLAN

11.    On January 16, 2009, the Debtors filed their Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan").

12.    Contemporaneously therewith, the Debtors submitted the Disclosure Statement in Support of the Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement").

13.    As set forth in the Plan and Disclosure Statement, the Plan included a "Global Compromise" between the Debtors, their senior noteholders (the "Noteholders"), and the official committee of unsecured creditors appointed in the Debtors' cases (the "Committee").

14.    As set forth in the Disclosure Statement, the Debtors projected that the Plan, as proposed, would provide a recovery to the Noteholders of approximately 25% to 30%.

15.    Also as set forth in the Disclosure Statement, as a result of the Global Compromise, the Plan provided for a limited recovery to the Debtors' general unsecured creditors (the "Unsecured Creditors"); however, the Debtors were unable to project the amount of the recovery to unsecured creditors because this recovery was unliquidated, and primarily derived from potential litigation proceeds.

16.    Although the Debtors were unable to project the possible recovery to Unsecured Creditors, this class of creditors was listed as "Impaired" in the Plan, and therefore, it was not anticipated that this class of creditors would receive a 100% distribution under the terms of the Plan.

17.    On June 12, 2009, this Court entered an Order Confirming the Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order").

18.    Following the entry of the Confirmation Order, the Debtors attempted to satisfy

3

all conditions precedent to the Plan becoming "effective"—including, without limitation, generating sufficient funds to satisfy unpaid post-petition administrative claims.

19.    Despite these efforts, the Debtors were unable to satisfy all conditions precedent for the Plan to become effective. As a result, at a hearing before this court on February 24, 2010, the Debtors sought this Court's conversion of these cases to cases administered under chapter 7 of the Bankruptcy Code.

## TRADECARD PAYMENT PROCESSING

20.    Upon information received, on or about June 9, 2006, TradeCard, Inc. ("TradeCard") and Debtor, Linens 'n Things, Inc. ("LNT"), entered into a TradeCard Membership Agreement (the "Membership Agreement"), pursuant to which TradeCard agreed to provide LNT with access to, and use of, the TradeCard Platform (the "TradeCard Platform").

21.    Upon information and belief, the TradeCard Platform is a logistics and payment processing system that allowed the Debtors to streamline the payment process to certain vendors.

22.    Upon information and belief, the Debtors would make payments to TradeCard (or its subsidiary), and in turn, TradeCard would process payments to in excess of 100 vendors who provided goods to the Debtors prior to the Debtors' payment to TradeCard.

23.    Upon information received, using the TradeCard Platform allowed the Debtors to consolidate payments across vendors—allowing the Debtors to make one payment to TradeCard and/or its subsidiary.

24.    Upon information received, the Defendant was a vendor whose payments (or a portion thereof), from the Debtors were processed through the TradeCard Platform.

25.    Upon information received, TradeCard and LNT entered into a Subscription Pricing Addendum to TradeCard Membership Agreement (the "Addendum").

26.    Pursuant to the Addendum, LNT agreed to pay TradeCard a subscription fee (the

"Subscription Fee") to use the TradeCard Platform. The Subscription fee was calculated as five "basis points" (.05%) of the total invoice amount of each transaction that was processed through the TradeCard Platform.

27.    Pursuant to the Addendum, the Subscription Fee was due and payable from the Debtors to TradeCard monthly, in arrears, upon the Debtors' receipt of an invoice from TradeCard.

28.    The Addendum also set forth a fee that TradeCard would charge to each of the Debtors' vendors (including, upon information and belief, the Defendant) whose payments were processed through the TradeCard Platform.

29.    Upon information received, the relevant vendors were required to pay TradeCard a per-transaction fee of thirty "basis points" (.30%) of the total invoice amount of each transaction (the "Vendor Transaction Fee").

30.    The Vendor Transaction fee was subject to a minimum of $5.00 per transaction and a maximum of $300.00 per transaction.

31.    Upon information received, the payments processed through the TradeCard Platform were "settled" through Platform Settlement Services, LLC ("PSS"), a wholly-owned subsidiary of TradeCard.

32.    To accommodate this payment arrangement, TradeCard and Debtor, LNT Services, Inc. ("LNT Services"), entered into the Platform Settlement Services User Agreement (the "PSS User Agreement").

33.    Listed on Exhibit A hereto are the transactions that the Defendant received from the Debtors, as processed through the TradeCard Platform (and, upon information and belief, settled through PSS).

34.    For each transfer, Exhibit A provides: (i) the total amount of the transfer that was

sent to TradeCard and/or PSS (the "Payment Amount"); (ii) the amount of that payment that was applied to invoices due and owing to the Defendant prior to the payment date (the "Total Invoice Paid"); (iii) the nature—identified through invoice number (the "Associated Invoices")—and amount (the "Associated Invoice Amount") of each antecedent debt satisfied by the Transfer; and (iv) the transferor, and associated vendor (the "Payee") of each Transfer.

## THE TRADECARD PREFERENCE COMPLAINT

35.    On December 19, 2009, Debtor LNT Services, Inc. ("LNT Services") commenced adversary proceeding number 09-53240 (CSS) (the "TradeCard Adversary Proceeding") in this Court against TradeCard, Inc., seeking, *inter alia*, to avoid and recover $31,314,344.59 (the "TradeCard Transfers") that LNT Services transferred to TradeCard during the Preference Period (as defined below).

36.    Since commencing the TradeCard Adversary, counsel for the plaintiff (formerly LNT Services, and currently the Chapter 7 Trustee) has worked with counsel for TradeCard to establish the factual background surrounding the TradeCard Transfers and the defenses that TradeCard has alleged—including the assertion by TradeCard that it received the TradeCard Transfers as a "mere conduit" for the vendors, including the Defendant.

37.    On December 22, 2010, TradeCard filed it Motion to Dismiss Complaint (the "TradeCard Motion"), and the accompanying Memorandum of Law in Support of Motion to Dismiss Complaint (the "TradeCard Memorandum of Law," and collectively with the TradeCard Motion, the "TradeCard Motion to Dismiss").

38.    Through the TradeCard Motion to Dismiss, TradeCard seeks this Court's dismissal of the TradeCard Adversary, apparently *in toto*, based upon the plaintiff's alleged failure to adequately plead facts related to the antecedent debt that relates to each preferential transfer sought to be recovered in the TradeCard Adversary.

39.   In its Preliminary Statement contained in the TradeCard Motion to Dismiss, TradeCard alleges that "Tradecard and its subsidiaries are in the business of being a conduit." *See* TradeCard Memorandum of Law, p. 2.

40.   Defendant received the Transfers listed on Exhibit A through the TradeCard Platform, and those transfers were a portion of the transfers that were the gravamen of the TradeCard Adversary Proceeding.   Through this Complaint, the Trustee seeks to avoid the Transfers and recover the monetary value of these Transfers from the Defendant.   Although the Transfers were contained within the gravamen of the TradeCard Adversary, the Trustee will not seek multiple recoveries of the amount of the avoided Transfers.

## GENERAL ALLEGATIONS

41.   On or within 90 days prior to the Petition Date (the "Preference Period"), LNT Services made one or more transfers of an interest of the Debtors in property to or for the benefit of Defendant, as set forth on Exhibit A hereto.

42.   As set forth above, these payments were made using the TradeCard Platform, and upon information and belief, each of the Transfers "settled" through PSS.

43.   Exhibit A reflects Plaintiff's current knowledge of the transfers made to Defendant during the Preference Period.   During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period.   It is Plaintiff's intention to avoid and recover all such transfers, whether such transfers presently are reflected on Exhibit A or not.   Collectively, all transfers made by the Debtors of an interest of the Debtors in property to or for the benefit of Defendant during the Preference Period (whether such transfers presently are reflected on Exhibit A hereto or not) are referred to herein as the "Transfers."

## COUNT I
### (Preferential Transfer Pursuant To 11 U.S.C. § 547(b))

44.     Plaintiff restates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

45.     The Transfers were made to or for the benefit of Defendant, a creditor of the Debtors.

46.     The Transfers were made for or on account of an antecedent debt(s) owed by the Debtors before such Transfers were made.

47.     The Transfers were made during the Preference Period.

48.     The Transfers were made while the Debtors were insolvent.

49.     The Transfers enabled Defendant to receive more than Defendant would have received if: (i) this was a case commenced under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payment on account of the debt paid by the Transfers to the extent provided by the provisions of the Bankruptcy Code. As set forth above, the Debtors attempted to confirm a Plan that contemplated a significantly reduced payment to the Noteholders, and a potential distribution to Unsecured Creditors.    Upon information and belief, at no point was it contemplated that the assets of these estates were sufficient to provide a 100% recovery to unsecured creditors—indeed, any distribution to this creditor group likely required the compromise of senior Noteholder claims that was set forth in the Global Compromise outlined in the Plan.

50.     The Transfers enabled the Defendant to receive a full, or substantially full, recovery on account of the antecedent debt(s) that were satisfied through the Transfers.

51.     Each of the Transfers constitutes an avoidable preference within the meaning of 11 U.S.C. § 547.

52.     Defendant has not returned the Transfers to Plaintiff.

8

## COUNT II
### (Recovery of Transfers Pursuant To 11 U.S.C. § 550)

53.     Plaintiff restates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

54.     Defendant is either the (a) initial transferee of the Transfers, (b) the entity for whose benefit the Transfers were made, or (c) an immediate or mediate transferee of an initial transferee.

55.     Plaintiff is entitled to recover the value of each of the Transfers pursuant to 11 U.S.C. § 550(a).

## COUNT III
### (Disallowance of all Claims - 11 U.S.C. § 502(d) and (j))

56.     Plaintiff restates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

57.     Defendant is an entity from whom property is recoverable under 11 U.S.C. § 550.

58.     Defendant is a transferee of the Transfers avoidable under 11 U.S.C. §§ 547.

59.     Defendant has not paid the amount of the Transfers, or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

60.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 7 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

61.     Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 7 estates or Plaintiff previously allowed by the Debtors or Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of all the Transfers.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests entry of a judgment in its favor:

(a)    awarding Plaintiff at least the sum of the Transfers, plus interest at the legal rate from the date of the Complaint, and ordering Defendant to immediately pay the judgment to Plaintiff;

(b)    disallowing, in accordance with 11 U.S.C. § 502(d), any Claims held by Defendant and/or its assignee until Defendant satisfies the judgment;

(c)    awarding Plaintiff post-judgment interest until the entire amount of the judgment is paid by Defendant;

(d)    awarding Plaintiff his costs, fees (including attorneys' fees) and expenses associated with the prosecution of this action; and

(e)    granting such other and further relief as is just and proper.

Dated: January 6, 2011
        Wilmington, Delaware

CIARDI CIARDI & ASTIN

/s/ Joseph J. McMahon, Jr.
Daniel K. Astin (No. 4068)
Joseph J. McMahon, Jr. (No. 4819)
919 N. Market St., Suite 700
Wilmington, DE 19801
Tel: (302) 658-1100
Fax: (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

-and-

Rick A. Steinberg, Esq.
*Admitted Pro Hac Vice*
100 Church Street, 8th Floor
New York, NY 10007
Phone: (646) 485-0605
Fax: (646) 688-4385
rsteinberg@ciardilaw.com

*Counsel for Charles M. Forman,
Chapter 7 Trustee*